Your first for Mr. Bentley. Morning, your honors and may it please the court. This appeal presents a question as to the proper construction, construction of an insurance policy exclusion in a CGL policy, specifically, whether the whether an insured versus insured exclusion that bars only claims or suits for property damage brought by one insured against another insured may be read broadly to exclude even indemnity claims that seek only to pass through liability property loss claims by a third party. The answer to that question is no, and the district court should be reversed. Can I ask you just a preliminary question? There's some obvious reason why H&E can't or didn't sue Georgia Pacific directly? Yes, your honor. The reason here is that a stay was entered. Well, the procedural reason is that a stay was entered in the Louisiana court before H&E could assert any additional claims. Now, whether or not they would ever assert a claim against directly against Georgia Pacific, I can't say, but they haven't been permitted to from a procedural standpoint. There are two reasons we argue that the exclusion preserves coverage for pass through indemnity claims. The first is the plain language of the exclusion, which focuses on who brought the claim for property damage in an original sense, preserves those claims. Ken Sayles' contrary reading, which would would lead to the absurd result that substantively identical claims, coverage for substantively identical claims, turn on pleading technicalities, specifically whether the claim was asserted directly against Georgia Pacific or simply passed through through an indemnity demand. And we use the phrasing, the clear language, one of your alternative arguments was, and maybe not making it today, that that the exclusion was ambiguous. Do you still have that argument that it's ambiguous? Yes, your honor. That is our second argument that even if Ken Sayles' broad reading could be seen as a reasonable reading of this exclusion, which we say should be read narrowly, even if it is a reasonable reading, then so too is Georgia Pacific's. The exclusion is ambiguous and under established law, it should be construed in favor of coverage. Is the only ambiguous part of it the brought by or do you say some other part is ambiguous? Well, I think the brought by in the context of the exclusion, whether as Ken Sayles argues, brought by means filed by in a technical pleading sense, and that all the court need do is look at what the two parties on the side of the V are, are whether brought by means, according to its plain and ordinary meaning, brought into existence, caused to occur. And so we think the focus is on brought by, but that's in the context of who brought the property damage claims. And in this case, we think the plain language, whether the property damage claim was brought by one insured against another, preserves coverage for pass through indemnity claims that by definition are not brought by an insured. And this to be adding into the definition, potentially, that the claim must be that of the person who brings it as opposed to an indemnification claim, which is what was brought in this particular insured versus insured. Why can't this be, I mean, you may not accept that that's what you're saying, but why can't this exclusion be read to be that it is a personal injury property claim? One of those two would be covered by the insured versus insured property claim here. Uh, isn't it no personal injuries? Uh, it's purely a property loss and property damage claim. Uh, so it's the property loss of someone else. Uh, but that claim is being brought by one of the insured against the other, even though it's not the initial insured's own claim, uh, once you're reading more into the exclusion and then is it there in the language anyway? Um, with respect to Judge Southwick, I don't think that we are. I think if you look at the plain language, the term brought by according to its plain and ordinary meaning is caused to exist. And the question then is who caused the property damage claim to exist? In this case, it is clear and it's undisputed that the property damage claim is H&E's claim, a non-insured. And to the point about whether, again, to be sure the claim is being passed through, uh, under the label of an indemnity claim, but I don't think courts have ever looked when determining whether prop, whether coverage is available, have ever looked strictly at labels. In fact, they look past labels to the factual allegations giving rise to the liability. And when the court does that in this case, and under this exclusion, it will go, it leads straight away to the fact, the essential fact that the property loss claims are H&E's claims. And I think that ties to the purpose of a, uh, insured versus insured exclusion. And I want to be clear that Georgia Pacific is not, as Kinsella has suggested, arguing that the purpose somehow trumps the language of the exclusion. What we say is... The policy defines a suit to include any civil proceeding in which damage is because of property damage or alleged. Now, why is this third party complaint not a suit under that definition? Well, it says claims and suits, Your Honor. And I take your point that a suit, again, at a surface level as a technical pleading matter, an indemnity claim is a suit. Well, that's the way the policy defines suit. Well, that's right. And then you look at the exclusion to determine what, uh, if your question is whether there's coverage under the policy for this suit, we think there certainly is, because the essential facts, again, are that H&E has asserted a property loss claim against one of the insureds. And the insured, that insured under a common law indemnity claim has said this liability, the third party's liability claims ought to be shifted to another insured. Uh, it's not a standalone claim. And in fact, by definition, uh, an indemnity claim cannot exist unless another claim pre-exists a common law indemnity claim, unless... I mean, doesn't that support the idea that the exclusion applies because this is a suit for damages by one insured against another? It's a suit for damages by one insured against another, but the question under the exclusion, we think the proper question and the proper analysis is determined who brought under the plain definition of to bring, who brought the claim that is at issue at bottom of the, the liability question. And that claim was brought by H&E equipment services, equipment is being passed through intact in its original form to another insured under this, in this context, and we think, again, the plain meaning of the, uh, exclusion does not bar coverage. And when you consider that meaning in the context of the reasonable expectations of parties to a CG, a CGL policy and the purpose of this type of enter, uh, a contract for a CGL policy, expect that claims by outsiders will be covered, that a lot of property loss claim by a non-insured that is originated by an outsider will be covered. I think the Biltmore Associates case that Kinsale from the Ninth Circuit, the Kinsale sites, uh, discusses this very, very thoroughly and says what the, the exclusion was meant to do, uh, was to bar intra company or intra insured disputes, it was never meant to bar claims by outsiders. And the essential facts here are that this is a claim by an outsider, a non-insured. And so when you think of the reasonable expectations of parties to a liability policy, that claims that are truly by non-insureds will be covered, I think that demonstrates that Georgia Pacific's reading is the best reading and best comports with the intentions of the parties, uh, which of course is the patient, uh, taking, I do want to talk just briefly about the Biltmore Associates case and Kinsale's. Another exclusion of coverage, uh, was that reached by the district court, uh, the rented property exclusion? That was reached only as applied to the named insured. And that exclusion is not on, not an issue on appeal here as relates to the additional insured Georgia Pacific. Uh, Kinsale has argued that the language of the exclusion cannot plainly, uh, preserve indemnity claims unless the policy specifically carves those claims out, uh, and it cites a policy that was discussed in the Ninth Circuit case, Biltmore to support that. I think there's a couple of problems with that and it demonstrates that Georgia Pacific's reading is the best. The first is that approach turns the standard analysis on its head. Under an exclusion, it is the insurer's obligation to clearly and unequivocally exclude the claims that it intends to exclude. It's not the insurer's obligation to make sure that certain claims are clearly and unequivocally included in the coverage grant. And second, I think the Biltmore Associates, the, the Cadwallader case from Louisiana 2003, which is cited by both parties specifically says that this type of comparative policy analysis is error, that when construing a bilateral contract between the parties, which is what this insurance policy is, that it is error to look to other policies and other language, uh, that may be more specific or less specific and other insurance policies not at issue in this case. So I think what Kinsale is asking the court to do is what exactly what the Louisiana Supreme Court said that the intermediate appellate court fell into error by doing in the Cadwallader case. Uh, you, you mean we shouldn't look to see that another CGL may have a more specific provision that would make it clear? Correct. That another policy that in, in Biltmore, there was a insured versus insured exclusion that barred claims brought or maintained by, uh, another insured. And then it specifically, this was a DNO policy, not a CGL policy, and it barred, uh, claims, uh, for pass through indemnity. And what Kinsale has said is that, well, that, that is the type of policy that would preserve coverage here. Well, I mean, shouldn't we, shouldn't, uh, shouldn't we think about an insured being able to maybe go somewhere else and get a policy that, uh, would more fit what he needs? I think you certainly can think about that, Your Honor. I think that's a proper consideration, but when the case comes to you and, and the question is the interpretation of this specific contract, I think Louisiana law is clear and the Cadwallader case is particularly clear that the question is the plain and ordinary meaning of that con, contract between those parties. And the court looks first to dictionary definitions, second to case law, discussions of similar terms, but it does not look to other policies, other contracts between other parties and attempting to determine what the plain meaning of this policy is. So your basic argument is this, uh, indemnity claim is not a suit brought against the insured. That's correct, Your Honor. The indemnity claim is in the sense of who brought, whether it is brought by an insured, it is not. Uh, the indemnity claim, the indemnity claim is. The question though, is whether the property damage claim is brought by an insured. There's no dispute here that the property damage loss alleged is by a third party, a non-insured. Uh, you're saying doesn't apply to a pass through or handoff of a charge that's otherwise been made. That's correct. It doesn't apply in this context. What the court has before it is a common law indemnity claim. What's your best case for that? Uh, I think our best case, uh, well, there, there aren't any cases that address this particular point. I think our best argument is the plain language of the policy exclusion and the dictionary definition of brought by read in context of who brought the property damage claim. And then I think this, the second, the buttressing of that is the, the purpose and the reasonable expectations of parties who enter a liability policy. And those expectations are that outsiders claims, which this is, will be covered unless they're specifically excluded. And this exclusion does not do that. Are you familiar with this seventh circuit case, uh, level three communications versus federal? I am your honor. Uh, and I think that K in that case, which also dealt with a D and O policy and no pass through indemnity claims, what judge Posner was offended by was that the party was arguing that the purpose, they were taking the purpose of the exclusion specifically focusing on collusion and using that and judge Posner's terms to trump the policy language. Georgia Pacific is not doing that. What we were saying is if you read this specific exclusion, you read, you give it its plain meaning, and then you look at the purpose of the exclusion and the reasonable expectations of parties to a CGL policy. It confirms the Georgia Pacific's reading is the correct one. It doesn't trump and it doesn't control the language. It simply confirms that the reading, the plain reading you get is the proper reading and the reading that most comports with the intent of the parties. Uh, and for these reasons, we would ask this court to construe the exclusion according to its plain terms, which does not bar pass through indemnity claims. At the very least, your honors, we would say that, that even if Kinsale has presented a reasonable reading, we think it's overly broad. We think it produces the absurd result that substantively identical claims turn on pleading technicalities. But even if it's could be considered reasonable, that demonstrates that this exclusion is ambiguous and it must be construed in favor of coverage. Okay. Thank you very much. Thank you, your honors. Mr. Richardson. May it please the court, Jeff Richardson for Kinsale Insurance Company. When the language of an insurance policy is clear and not ambiguous, the insurance contract must be enforced as written and the courts, excuse me, what's the purpose of this exclusion, what kind of a risk is it to the public and to the insurers? And what is the purpose of this exclusion? Are you, are you protecting you from? Um, well, first of all, your honor, we don't believe that when language is plain, you need to search for the purpose and that's the cases that we cite. But assuming you get past that, if you do look for the purpose, um, we believe the purpose has some purpose. I mean, maybe plain is what, plain isn't so much in the eyes of the beholder, but, but assuming it's plain, the question of why, trying to understand the plainness of it, it's what role does it play here in allocating risk? Uh, when the, when, uh, is it collusion among your insured? Your honor, we believe that the purpose is so that the insurance company doesn't have to have an awkward situation where it's insured or fighting against each other and the insurer has to pick sides. And so here in a claim by one of our insureds advanced. But in, in, in indemnification, it's, it's this one that you're, it's the question of just handing off the liability from one insured to another. So you only end up with one, one claim against you. That realistically, it's just a question of which one is a. Well, not necessarily, your honor. I mean, in this case, you're not, you're not, you're not defeating the expectation of the parties by accepting indemnification because the, the, the one that incurs a liability is insured. We think it's reasonable for insurance companies to not want to have to take sides between their insureds. And I'm suggesting to you, you're not taking sides. And your honor, we, I understand that interpretation, but the Kinsale and putting together this policy didn't want to have to get into the nitty-gritty of when you have an indemnification claim, who, whose side are you taking? Because remember how that works. H&E who rented this excavator sued the company that rented it, Advanced. And so H&E is going to get a judgment or not get a judgment against Advanced. And because of the third party demand, Advanced will then turn around, presumably after they pay that judgment or at the same time, and then get money from GP. But in there, they're both insureds of Kinsale and you can understand, or we believe it's reasonable for an insurance company to say, we don't want, we're going to defend our insureds against the world. Our insureds are like our children. We're defending them against the public. So whether it's H&E suing them directly, the city of Gloucester, which happened in the Mississippi litigation. That makes sense. When you have, when the fight is between two insureds directly, A sues B and they're both insured period, but you don't have a factually, you don't have A suing B, you've got another party suing A who says I'm not liable, but it's B. And. Well, the plain language, Your Honor, says that the exclusion applies to claims or suits. And I have never heard a compelling argument from GP, they don't address it in their brief, as to why a third party demand is not a suit. And in fact, this Court ruled in the Fidelity case that we cite that a third party demand was indeed a claim or suit. In that case, it was claim that was in the exclusion. So we believe that the focus is on the third party demand. Now, I agree that if you step back and you say, who brought these claims in the first place? It's sort of an existential question. What was the original cause? But if you start asking those questions, how far back do you go? Do you blame the city of Gloucester for renting GP the plant in the first place? Do you go all the way back to people buying plywood to get from the plant? Yet plain reading of the language is who brought the lawsuit. And GP's . . . . . . one other thing. Going back to Judge Higginbotham's question, when you have a construction project with a number of entities working on one project, it makes a lot of sense to have one insurance company covering everybody so that, you know, whoever gets stuck with doing something wrong, you don't have them fighting among themselves. You don't have multiple attorneys, multiple attorney fees to pay. You've got one insurer who's going to pick up the whole thing. And it seems like that's basically what they did here. Well, in the context of defending our insurance against anyone in the public that makes a claim, that's absolutely true. And so in the Mississippi litigation, I realize we're here because of the Louisiana litigation, but y'all know from the briefs, there was also a Mississippi case that is now settled when the city of Gloucester, who owned the plant that burned down, they sued everyone under the sun that they could think of who was responsible. And some of those people were insured by Kinsel, but some of them were not. There was also a security company that was supposed to be going around the grounds and making sure that things weren't catching on fire. They were sued and their insurer was sued. And so you can't have a perfect world where there's only a single insurance company for everybody. I mean, this looks like it was an attempt to do that, at least partially. Sure. But, and to the extent that we are sued because our insureds are being sued by the public, that's exactly what CGL policies are made to cover. And we cited a case from Florida, the Inter case on that, that that's the purpose of CGL policies. Now, GP wants you to think that the only purpose of an insured versus insured exclusion is when you have director and officer policies. DNO policies. But the only reason that they say that is because decades ago, when that language was first put in the first insurance policy, it was put in a DNO policy. But that doesn't mean that nobody can ever use that language in a different context ever again, which you have to believe if you're going to accept their argument, you can use that language for other contexts as well. And that's why the Sphinx case from the 11th circuit and the level three case from the seventh circuit with the colorful language from judge Posner that we cited in our brief, they say when the plain, the language is plain, you look at the plain meeting, you don't start looking underneath to see what may have been the motivation, what may have been the thought. I mean, I would agree that you can talk yourself into anything, perhaps. Can't this policy be read the exclusion to address a situation where you have two insureds, A and B, and A is the injured party bringing a claim, but it doesn't necessarily reach a situation where neither of your insureds were the injured party, they are this potential defendants. Well, advanced would disagree with that characterization. Advanced would argue that the advanced, who is our original insured, that they are the injured party because they would argue we rented this equipment that was burned down in a fire that we believe Georgia Pacific is responsible for, for not us. So we're injured. We have property damage and that we may have to pay somebody for an excavator that it's not our fault that it burnt down. And that's why they brought the third party demand. That's why they brought the suit or claim. I think it falls under either claim or suit under the policy language. Does Louisiana law apply to this suit? What's that? What law applies to this suit? In terms of state, we believe it's Louisiana law because the policy was issued in Louisiana. Is there, is there potential for a contribution claim against GP? Yes, I believe it could be. In fact, I think you could probably fairly read it. It's either a contribution or an indemnity claim, the third party demand that was brought in Louisiana. But I don't think the conclusion changes because however you characterize it, whether you say it's a contractual claim, a tort claim, a contribution claim, it's still a claim or suit by one insured, brought by one insured against another insured. So I don't really think that changes the conclusion, at least not in our opinion. Does your, does your company sell policies that have, have a different provision for a, instead of one insured suit against another? There's nothing in the record, Your Honor, about other types of policies that Kinsel brings. And I don't want to talk outside of the record. I mean, I will be candid and say that people, clients negotiate for different type of policies all the time. And in fact, in the Biltmore case that Georgia Pacific feels compelled to address, that of course was a case in which they thought the insured versus insured exclusion as plainly read would have barred indemnity suits. And so for whatever reason, the person that got that policy said, you know, we're going to carve into their indemnity suits, the insured versus insured provision does not apply. And so that's why Biltmore is, the policy there is different. You have a, A sues B and they both have CGL policies you've issued. That's an insured, insured, insured. You got to choose between them? Well, we would. I mean, how would we settle this lawsuit where we have, you know, we're trying to get Georgia Pacific, but we're giving money to another insured. I mean, I'm not saying it's impossible and I'm not saying that in everyday life, sometimes things are not awkward for all of us, including our clients, insurance companies. I mean, it happens all the time, doesn't it? Sure. But the question is. Accident and insurance company may be on three sides of it. That happens all the time. But the question is, is it rational for an insurance company to at least try to do something about it? But you're right, but your argument would be essentially that you're justified in saying, well, I exclude from coverage. If you, if you, unfortunately, if you, if you, if you, if we have two insureds, we don't have to cover anybody. Well, no, because we're going to, we're going to defend those insureds when they're sued by third parties. The same, the same arguments you're making. It seems to me it's in tension with the notion that what your common practice is that you, you all the time have two insureds and one suing the other insured. And then when you say, well, but they, that we do that, but we have one policy, then there's no coverage. Well, Judge Higginbotham, you could just as easily say, well, Advanced bought this insurance policy and it turns out that there was no coverage for this excavator because it was rented property. And there's a rented property exclusion. You referred to that in one of your questions. And that's not an issue in appeal because Advanced gave up their appeal before this court, as, as you know. And so the trial court ruling that the rented property exclusion applies. Why wasn't the rented, I wondered about that. Why wasn't that particular potential defense or exclusion addressed? We didn't assert that here, Your Honor, mainly because, well, we, we could still assert in the future perhaps, but the way that the policy reads is it has a word U in there. And although it's clear that the U applies to our named insured, Advanced, it would be a little bit more messy as to whether it applies to an additional short like GP. So what we brought in our summary judgment motion was the clean argument, insured versus insured. So that way you didn't have to get into that, that analysis. I didn't quite understand counsel's answer to my question. When I asked what's the, what's the reason H and E didn't sue a GP directly? But when you think about it, Your Honor, I mean, first of all, who knows, but I think it's reasonable. If I rent equipment to somebody and we've all rented things before, you know, you sign the contract saying you're responsible. If it's broken, you got to fix it. I mean, H and E must have felt like they had a ironclad argument against the lessee, Advanced. And in their opinion, if Advanced wants to go out and blame GP, blame somebody else, blame anyone under the sun, I suppose they can do so. But their claim is against the person that rented it. Now, having said that, Your Honor, if they turn around tomorrow and they file a claim against GP, well, the insured versus insured exclusion would not apply to that. We'd have to deal with that. But in that case, we would be representing or defending in this case, our insured against somebody who is not an insured, a member of the public. And that is exactly what CGL policies are made for. I mean, we, we quoted that in a brief cases that say that that's the intent of a CGL policy. Mr. Owens, Georgia Pacific is saying this is an indemnity claim and looking at the language of the exclusion, the brought by doesn't apply. Let's say from your viewpoint, we errantly accept that that's a reasonable argument. Does the fact that Georgia Pacific and Advanced could be separately liable for separate acts of negligence alter that at all? It's not a strict indemnity claim, whether it's comparative negligence or contribution, whatever the phrasing is in Louisiana. How would that affect any sense on any judge's part that an indemnity claim is not excluded by this insured versus insured? No, that's an interesting question. I could see that being an issue because there would be different types of claims against the different, against Advanced and against Georgia Pacific. I'd have to think through what implications that that would have. You know, we've tried to keep it more simple here that the third party demand is a claim or suit by one insured against the insured. And it stops as simple as that. The property damage is not, if it's strictly the responsibility of one or the other and it's a pass-through or not a pass-through, depending on how the indemnity works, it does seem to me that there is some viability to the argument that this claim for property damage was not brought by the initial defendant who brought in the third defendant, second defendant, third party. But if there ends up being a battle among or between these two defendants as to who is primarily responsible, then that adds at least another layer of analysis. Sure. I mean, that's, I guess, what happened in that Fidelity and Deposit case, which is the big Fifth Circuit case that we cite in our brief, where the FDIC sued Connor. There was a failed bank and they sued Connor, a former officer and director, saying that he caused the bank to fail. And then Connor turned around and filed the third party demand saying, whoa, it wasn't my fault, it was these other jokers that used to be in the bank. And so he filed the third party claim against them. And again, the same facts as here, the insurance company asserted insured versus insured, the trial court granted summary judgment, and this court affirmed by the Fifth Circuit. And it's unclear of the nature of Connor's claims with, you know, I don't think Connor had a pass-through claim. I think Connor was arguing that my other directors, they're the ones that, I mean, I'm sure everybody pointed fingers at everybody on who caused the bank to fail. Much like this fire, everyone's pointing the fingers at everyone else as to who caused the fire. So you have a similar situation. One thing I would like to address, Your Honor, in the reply brief that my opponents filed, because we didn't file a surreply, there was a statement that I thought was a mischaracterization on page seven of their brief, where they say that our argument that it would be awkward for an insurance company to defend two insureds, that's a justification for insured versus insured. They say that Kinsell argument overlooks the fact that it provided a defense to both Georgia Pacific and Advanced, even though they had claims against each other. In the Mississippi litigation, that's actually not true. In the Mississippi litigation, the original lawsuit was against GP and we defended GP in that case. Then GP filed a third party claim against Advanced. We did not defend that claim. We asserted the insured versus insured exclusion. That's in the record at page 787, our exclusion. And then later, the city of Gloucester itself sued Advanced and we sued. And this gets to the question that I believe you were asking, Judge Davis, if in the case, we sued GP directly, that would be a different lawsuit. I wouldn't have an Advanced, an insured versus insured. What's that? What happened to the lawsuit? It's settled. Ultimately, that's about two months after Advanced was directly sued by the city. There was a big mediation that we had up in Jackson, Mississippi, and it was successful and we paid some money and other people paid some money. And a copy of the settlement agreement is actually located in the record, if you want to see how it all settled out. And maybe one day the Louisiana litigation will settle too. But if, and when it does, you know, we will defend to the end of the earth our insureds when they are sued by third parties. But when insureds are suing insureds, that is what our policy includes. And that's what we don't have coverage for. Okay. Thank you very much. Thank you, Your Honors. Thank you, Your Honors. And may it please the Court. The first thing I want to do is clear up this assertion that we've mischaracterized anything. In the Mississippi litigation, there were claims pending between Advanced and Georgia-Pacific. There were also claims against, by another party against Georgia-Pacific and claims against Advanced. And Kinsale was able to manage all of that, provide a defense to both parties without any, quote unquote, awkwardness. We think the awkwardness rationale is not supported by any precedent. And that Kinsale has a duty to defend, as Your Honors have been discussing, any insured that it promises to defend. And there are certainly ways to avoid awkwardness or conflicts. Judge Higginbotham, I want to pick up on a point that you made, which is that there is really just one claim here. There's one liability. And that liability is for a property loss by H&E Equipment. The property damage claim was brought by H&E Equipment. It's being passed through from A to B, as you described. But the claim remains intact. And this is not a contribution claim. I would direct the Court to the record at 864, which is where Advanced Common Law Indemnity Claim appears. And a Common Law Indemnity Claim, by its very nature, suggests that there is only one active tortfeasor, that the claim should be shifted from the passive tortfeasor to the active tortfeasor. It's not a contribution claim. And again, I do want to say that Kinsale's argument that if H&E would just file a claim directly against Georgia Pacific, it would step in and defend that claim, demonstrates the absurdity of not defending it under this pass-through claim, because that would be no different. It's the exact same claim, whether it's asserted by H&E or passed through by Advanced. And in both instances, the purpose of the CGL policy is served by providing coverage for this single claim. Are there any further questions? Thank you, Your Honors.